

FILED
IN OPEN COURT

JAN 2 1 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.   4:13cr 43 |
| | ) | |
| CHRISTOPHER DEVON BARRETT, | ) | |
| a/k/a "Murda," | ) | |
| "C-Murda," | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

This statement of facts is submitted in support of the defendant's plea of guilty to Counts Two and Sixteen of the second superseding indictment charging engaging in a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848(c) and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).  The parties stipulate and agree that had the matter gone to trial the United States would have proven the following facts beyond a reasonable doubt.

1.      From in or about 2005 until March 13, 2013, CHRISTOPHER DEVON BARRETT, was a leader and organizer of a drug trafficking organization that obtained cocaine and heroin, in partnership with Steven Morris, from out-of-state suppliers, and obtained heroin from suppliers in the Eastern District of Virginia, for distribution to mid-level distributors and users on the Virginia Peninsula and elsewhere in the Eastern District of Virginia. CHRISTOPHER DEVON BARRETT, together with Steven Morris, caused the transport of cocaine from New York City to Virginia, obtained heroin from Virginia suppliers, determined the prices that would be paid for the narcotics, where the narcotics would be stored, the manner in

which the narcotics would be packaged, and determined who would be included in his inner circle of lieutenants. The drug trafficking organization that CHRISTOPHER DEVON BARRETT was involved in is referred to herein as the BARRETT DTO. The BARRETT DTO supplied 150 kilograms or more of cocaine during the conspiracy. Much of this cocaine was converted into cocaine base, commonly known as crack cocaine and distributed as crack cocaine, sometimes referred to simply as "hard" or "hard ball." In addition to selling cocaine and crack cocaine, in 2012, the BARRETT DTO expanded into selling heroin. Typically, CHRISTOPHER BARRETT broke the heroin down into ounce quantities, and then lieutenants and mid-level distributors packaged the heroin into glassine bags for distribution.

2.      Evidence concerning the criminal activities of the BARRETT DTO was derived from a DEA investigation that utilized a variety of investigative techniques, including Title III Interceptions. On December 10, 2012, the Honorable Mark S. Davis, United States District Judge for the Eastern District of Virginia, approved an application for an Order authorizing the interception of wire communications occurring to and from a Verizon Wireless cellular telephone (757-262-9109) which was utilized by CHRISTOPHER BARRETT and other members of the BARRETT DTO, primarily Donald Smith and Wayne Barrett, who were engaged in selling narcotics from the Colonial Landing Apartments on Kecoughtan Road, and referred to herein as Target Telephone #1. Under the authority of the Court's Order, interception of wire and electronic communications on Target Telephone #1 began on December 11, 2012. Wayne Barrett was one of the primary users of Target Telephone #1 until his arrest on November 30, 2012. At that time, Donald Smith took over as the primary user on Target Telephone #1.

3.      On January 14, 2013, the Honorable Mark S. Davis, United States District Judge for the Eastern District of Virginia approved an application for an Order authorizing the interception of wire communications occurring to and from a Verizon Wireless cellular telephone (757-268-1015, and subsequently assigned 757-951-7493) utilized by CHRISTOPHER BARRETT, and referred to herein as Target Telephone #2. Under the authority of the Court's Order, interception of wire and electronic communications on Target Telephone #2 began on January 15, 2013.   On February 8, 2013, the Honorable Mark S. Davis entered an Order extending interceptions on Target Telephone #2 for a period of thirty (30) days measured from February 13, 2013, when the original Order would have expired. Although Wayne Barrett was arrested on November 30, 2012, on January 25, 2013, Wayne Barrett was released on bond and resumed his active participation in the conspiracy.

4.      On February 8, 2013, the Honorable Mark S. Davis, United States District Judge for the Eastern District of Virginia approved an application for an Order authorizing the interception of wire communications occurring to and from a Page Plus cellular telephone (702-232-9606) utilized by Steven Morris, and referred to herein as Target Telephone #3.   Under the authority of the Court's Order, interception of wire and electronic communications on Target Telephone #3 began on February 9, 2013.

5.      CHRISTOPHER BARRETT was a leader of the BARRETT DTO, a continuing criminal enterprise.   Further, CHRISTOPHER BARRETT, through the BARRETT DTO, over the course of its operation, committed a continuing series of related violations of federal narcotics laws.   Members of the BARRETT DTO included Wayne Barrett, Demetrius D. Askew, Donald Smith, Darryl M. Elliott, Timothy R. Alexander, Antoine M. Richardson, Stacy Wise, Jetadia Cook, William Cofield, Larry Stokes, Alesha Cousins, Tinesha Dubrey, and others.

CHRISTOPHER BARRETT obtained substantial income as a result of the series of narcotics violations committed by the continuing criminal enterprise he organized.

6.      Following Wayne Barrett's arrest in the fall of 2012, his duties as a lieutenant for the BARRETT DTO were taken over by Donald Smith. On November 30, 2012, Wayne Barrett, who was in custody at the Newport News City Jail, placed an outgoing call from the jail to CHRISTOPHER BARRETT. During the conversation, Wayne Barrett and CHRISTOPHER BARRETT discussed the recent arrest of Wayne Barrett, the need for Donald Smith to assume Wayne Barrett's role, and the day-to-day affairs of the BARRETT DTO. During the discussion, CHRISTOPHER BARRETT told Wayne Barrett about drug proceeds that were lost through gambling by CHRISTOPHER BARRETT.

7.      CHRISTOPHER BARRETT admits the following violations of federal narcotics laws occurred during the course of the BARRETT DTO operation:

a.)     CHRISTOPHER BARRETT, Wayne Barrett, and others, distributed heroin from an apartment in the Colonial Landing complex located off Kecoughtan Road, Hampton, Virginia. This apartment was leased in the name of co-conspirator Darryl Elliott, a crack cocaine user and lower level distributor for the BARRETT DTO. During that same time frame, the BARRETT DTO was also distributing cocaine, crack cocaine, and heroin from hotel rooms at the Super 8 Motel, 1330 Thomas Street, Hampton, Virginia, as well as from various vehicles operated by DTO members.

b.)     On September 6, 2012, a member of the BARRETT DTO contacted the Hampton Police Division and reported the larceny of approximately $20,000.00 from one of the rooms utilized by the BARRETT DTO. When making the report to police, the BARRETT DTO member claimed that the missing currency was the individual's life savings.

4

c.)     Heroin purchasers called Target Telephone #1 and spoke with CHRISTOPHER BARRETT or other DTO members to request drugs. Purchasers were then directed to come to the apartment, where they paid a DTO member at the door and waited for the heroin to be brought out to them. The cooperating witness further advised that the heroin was bagged in either white or green glassine bags, and bundle quantities cost $70.00 each. Witnesses recalled observing firearms in the apartment. Witnesses would have testified that in the fall of 2012, BARRETT DTO members also distributed heroin from various vehicles, and CHRISTOPHER BARRETT and DTO members were in possession of a large Ziploc type plastic bag containing between thirty and fifty bundles (350-500 individual bags) of heroin.

d.)     On June 29, 2012, officers of the Hampton Police Division received a 911 complaint of gunshots having been fired in the area of the Colonial Landing apartment complex, 2100 block of Kecoughtan Road, Hampton, Virginia. Upon arrival, the officers discovered several bullet casings in the courtyard area, as well as a trail of blood leading to 2109 Kecoughtan Road, Apartment 41C. Receiving no answer at the door, officers entered the apartment through an unsecured rear window to check for injured persons inside.  Upon entering the apartment, officers discovered a .45 caliber semi-automatic pistol and various documents, to include a Virginia Power bill for the apartment, listed in the name of Wayne Barrett. A state search warrant obtained to gather evidence of the shooting incident led to the observation of narcotics in the residence, as well as the seizure of ammunition of several different calibers. Detectives subsequently obtained a second state search warrant for the narcotics and seized heroin, crack cocaine, powder cocaine, marijuana, packaging materials, cellular telephones, computers, and numerous documents. Among the items recovered were documents in the names of Demetrius Askew, Wayne Barrett, CHRISTOPHER BARRETT, and Jetadia Cook.  The .45 caliber pistol

was a firearm possessed by CHRISTOPHER BARRETT in furtherance of drug trafficking as described in Count 16.

e.) Evidence seized during the execution of the aforementioned search warrant was submitted to the DEA Mid-Atlantic Laboratory for analysis by a qualified forensic chemist. The chemist determined that DEA Exhibit 1, plastic bags of suspected marijuana recovered from beneath a seat cushion, was analyzed and determined to be 5.5 grams of marijuana; DEA Exhibit 2, a knotted plastic bag containing an off-white substance recovered from inside a shoebox in a bedroom closet was analyzed and determined to be 56.0 grams of heroin. A scale recovered from the second shelf of the hallway closet in the apartment was analyzed and found to contain heroin and cocaine base (crack) residue. A scale recovered from a shelf above the kitchen sink was analyzed and found to contain marijuana and cocaine residue. In addition, a metal strainer recovered from the shelf of the hall closet was analyzed and found to contain heroin residue.

f.) The shooting incident led the BARRETT DTO to move its distribution activities to a second apartment within the Colonial Landing complex. This apartment, 2101 Kecoughtan Road, Apartment 12A, Hampton, Virginia was leased to DTO member Larry Stokes. The BARRETT DTO continued to distribute cocaine, heroin, and crack cocaine from that location until the date of their arrests on March 13, 2013. This is corroborated by law enforcement surveillance, cooperating witnesses, the controlled purchases of heroin and crack cocaine, and intercepted telephone calls on both Target Telephones 1 and 2.

8. CHRISTOPHER BARRETT utilized Steven Morris as a source of supply for cocaine and heroin and also accompanied him to both New York City and Atlanta, Georgia to obtain controlled substances for re-sale by the BARRETT DTO. On or about February 2, 2012, CHRISTOPHER BARRETT, Steven Morris, and an additional, unindicted BARRETT DTO

member were stopped by law enforcement officers in Granville County, North Carolina for a traffic violation. A consent search led to the seizure of approximately $83,000.00 in United States currency, which was the proceeds of drug distribution, and was subsequently forfeited by DEA in an uncontested Administrative Forfeiture.

9.      On or about January 20, 2013, and continuing through on or about January 21, 2013, CHRISTOPHER BARRETT had members of the BARRETT DTO, Alesha Cousins and Tinesha Dubrey travel to New York City with Steven Morris to purchase 2 kilos of cocaine for distribution by the BARRETT DTO; BARRETT DTO members were able to purchase approximately 1.8 kilos of cocaine from Jonathon Holguin and Edwin Fernandez. At that time, Holguin and Fernandez were selling a kilo of cocaine to Steven Morris for $43,000 per kilogram. The travel by Cousins and Dubrey would be corroborated by Triangle Rental records. Upon Cousins' and Dubrey's return to Virginia, CHRISTOPHER BARRETT paid them.

10.     On February 1, 2013, CHRISTOPHER BARRETT purchased twenty ounces (560 grams) of heroin from a supplier located in Norfolk, Virginia.  CHRISTOPHER BARRETT was accompanied by Wayne Barrett during this transaction.  This transaction was surveilled by DEA agents who saw the meeting between CHRISTOPHER BARRETT and his heroin source of supply.

11.     On February 1, 2013, Robert Mills, a heroin customer of the BARRETT DTO, died in York County from an overdose of heroin.  On February 2, 2013, during intercepted telephone calls on Target Telephone 2, CHRISTOPHER BARRETT and Demetrius Askew discussed the overdose death of Robert Mills, as well as other recent overdoses by heroin customers of the BARRETT DTO.

7

12.    On February 4, 2013, at approximately 4:25 P.M., on Target Telephone 2, CHRISTOPHER BARRETT placed an outgoing call to co-conspirator Antoine Richardson. After some general conversation, CHRISTOPHER BARRETT and Richardson discussed the need for Richardson to further dilute or "cut" the heroin CHRISTOPHER BARRETT had provided to him. During the discussion, CHRISTOPHER BARRETT and Richardson discussed the fact the heroin was too strong and had resulted in overdoses.   Richardson, excited about the potential of obtaining high quality heroin, told CHRISTOPHER BARRETT that he was about to come see him to obtain some of the heroin, for re-sale.

13.    On March 13, 2013, search warrants were executed at various locations associated with the BARRETT DTO. During the course of these search warrants, United States currency which was the proceeds of drug trafficking by the BARRETT DTO was seized from several locations.

14.    On that date, a federal search warrant was served at Wayne Barrett's residence on Aqueduct Drive, Newport News, Virginia. Agents recovered $6,850.00 in United States currency from the residence, which constituted proceeds of the distribution of narcotics.

15.    A federal search warrant executed at 3 Harland Circle, Hampton, Virginia, the residence of Demetrius Askew, led to the recovery of $10,035.00 in United States currency and assorted jewelry valued at approximately $9,175.00 in United States currency, all of which was the proceeds of drug trafficking by the BARRETT DTO.

16.    A consensual search at 311 Pennsylvania Avenue, Hampton, Virginia, the residence of CHRISTOPHER BARRETT, yielded the recovery of $6,405.00 in United States currency, as well as the seizure of approximately $79,880.00 worth of jewelry, two (2) firearms (a Ruger .9mm semi-automatic handgun and a Springfield Armory model XD-9 .9mm

8

semi-automatic handgun) from Andrea Barrett's bedroom, and the serialized box matching the Ruger pistol from CHRISTOPHER BARRETT's bedroom.   A state search warrant was executed on that same date at 660 Aqua Vista Drive, Apartment C, Newport News, Virginia, the residence of CHRISTOPHER BARRETT's aunt, Joyce Barrett.   The search of that location led to the seizure of $30,751.00, in United States currency all of which was the property of CHRISTOPHER BARRETT and the proceeds of drug distribution by the BARRETT DTO.

17.     The acts taken by the defendant, CHRISTOPHER DEVON BARRETT, in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law.   The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

Dana J. Boente
Acting United States Attorney

By:  _____
Howard J. Zlotnick
Managing Assistant United States Attorney

_____
Robert E. Bradenham II
Assistant United States Attorney

_____
Rebecca A. Staton
Special Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, CHRISTOPHER DEVON BARRETT, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
CHRISTOPHER DEVON BARRETT

I am CHRISTOPHER DEVON BARRETT 's attorney.   I have carefully reviewed the above Statement of Facts with him.   To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Lawrence H. Woodward, Jr.
Counsel for CHRISTOPHER D. BARRETT

10